## Estate of William Stevenson. Appeal of William S. Stevenson, et al.

*Mortgage—Act of April* 18, 1853, *P. L.* 503—*Condition precedent to leave of court.*

Leave to mortgage should not be given when the proceedings to obtain such leave make no distinction between the cost of necessary repairs and the cost of additional improvements, and fail to disclose what proportion of the latter should be borne by the life tenant and the estate in remainder respectively. The court in granting leave to mortgage must be advised as to whether the proposed alterations or improvement will not only be advantageous to the remainderman but of greater cost than the life tenant should bear. The evidence should be sufficiently full to enable the court to frame a decree specifying with sufficient fullness and certainty how and in what proportions the loan should be paid. To this end the court must be informed ; (1) as to probable duration of life estate ; (2) whether the necessity is due to neglect of trustee to keep premises in repair ; (3) whether proposed alterations are to the benefit of the remaindermen or principally for that of the life tenant ; (4) whether they will outlast the expectation of the life tenant or become useless before the expiration of the life estate. In any of these cases the burden should fall only on the life estate. Any permission to mortgage under these conditions would be in relief of the life tenant at the expense of the remaindermen.

*Price act—Mortgage when permitted—Remaindermen considered.*

Proceedings looking to a mortgage, under the Price Act, can only be had when it is clearly made to appear that such mortgage will be for the interest and advantage of those interested and without injury and prejudice to any trust for which the real estate is held.

The statute limits the power of the courts so as to preserve the constitutional rights of property and contemplates the conveyance or mortgaging of real estate only when advantageous to all concerned.

Argued Oct. 20, 1896. Appeal, No. 18, Nov. T., 1896, by William S. Stevenson, et al., from decree of O. C., Phila. Co.,

Oct. T., 1887, No. 480, granting leave to mortgage under the Price Act. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, ORLADY and SMITH, JJ. Reversed.

Petition for leave to mortgage under Price Act. Before ASHMAN, J.

William Stevenson died in 1887 leaving by will real estate in trust for certain life estates with remainder over.

The life tenants applied for leave to mortgage under the Price Act. It appears from the evidence taken in support of the petition that the house for a long time rented for $25.00 per month and had been permitted to fall into bad repair; that the character of the neighborhood was changing, and that an alteration from a dwelling house to a store would advantage the life tenant. That some of the money borrowed was needed to make good the neglect of years in keeping up the property. The remaindermen objected to the allowance of mortgage.

Other facts appear in the opinion of the Superior Court.

The court below granted the prayer of the petition in an opinion by ASHMAN, J., reported in 5 Dist. Rep., 5.

*Error assigned* was to the decree of the court below in granting the prayer of the petition.

*B. F. Fisher*, for appellants.—The tenant for life is bound to keep down ordinary charges for taxes and repairs, out of the rents and profits of the estate: Cairns v. Charbert, 3 Ed. Ch. Rep. 312.

A tenant for life has no power to bind parties in remainder who claim by title paramount: Hill v. Roderick, 4 W. & S. 221; he is even chargeable with the expense of a pavement required by municipal ordinance: Hitner v. Ege, 23 Pa. 305.

There is no claim here for betterments to preserve the property, but pure and simple to alter the property to secure an increased rental, while nearly or altogether one half of the sum asked for is required to have the ordinary repairs required done.

*Chapman & Chapman*, for appellees.

OPINION BY SMITH, J., February 16, 1897 :

This proceeding was instituted in the orphans' court on the petition of the beneficiaries of a trust created by the will of

William Stevenson, under which they are entitled (inter alia) to the net income arising from a certain tenement known as No. 235 Callowhill street, in the city of Philadelphia. The petitioners aver that the property is now used as a dwelling house, renting for $25.00 per month; that if altered and converted into a store property it could be rented more easily and for a larger sum; and that the change would improve and benefit the trust estate. They therefore ask the court to authorize the trustee under the will to borrow $500 to be expended in thus altering and improving the building, the loan to be secured by a mortgage on the premises. The petition further avers that the trustee, E. A. Miller, believes that the improvements would be for the benefit of the estate, and "so far as he is concerned, he submits himself to the order of the court;" and he also "answers" to the same effect.

The respondents, representing the estate in remainder, contend that the petitioners have merely a life interest in the premises, and say that the contemplated alterations and improvements would be wholly for the benefit of the life tenants; they seriously doubt whether the contemplated improvements would at all increase the market value of the property; and they ask that the application be refused and the proceedings dismissed.

Upon replication being filed an examiner was appointed who took the testimony of witnesses and made a report; but from the incomplete and fragmentary way in which the case is presented here it is impossible for us fully to discover what the testimony was or what the examiner reported.

By the terms of the will the entire estate of the testator is committed to the control and management of the trustee, E. A. Miller, and, regularly, the proceedings should be by him and in his name. But as all those who have an interest in the estate, including the trustee, appear to have become parties, the cause may be proceeded with as if it had been more regularly begun. It is evidently based on the authority conferred upon the courts by the act of April 18, 1853, commonly known as the "Price Act," which provides (inter alia) that whenever real estate is held "by trustees for any public or private use or trust," and the court "shall be of opinion that it is for the interest and advantage of those interested therein, that the same should be . . . . mortgaged . . . . and may be done without injury or

prejudice to any trust, charity or purpose for which the same shall be held," the court shall have jurisdiction to decree the mortgaging of such real estate.

The will provides that the trustee shall let the premises, collect the rents, " and after defraying all necessary and proper charges thereupon, including repairs, taxes and water rents, to pay the net income" to certain persons therein named. The appellees, by devolution and survivorship, succeed to this life estate.

The appellants contend that the dilapidated condition of the building is due to the trustee's neglect to keep it in repair, although from the death of the testator in March, 1887, until June, 1895, the property yielded a rental of $25.00 per month.

It appears by the testimony of the trustee, E. A. Miller, that from the time of his appointment, March 14, 1891, until June, 1895, he received as rent $1,100 in cash and a note for $75.00 ; and that during this period he expended $64.35 for repairs. By reference to his father's accounts he says the property rented for $25.00 per month during the latter's trusteeship of four years, and that he paid out $67.30 for repairs to the property. From this it will be seen that during these eight years the receipts for rent amounted to $2,375, while but $131.65 was paid out for repairs. It nowhere appears in the testimony sent here what the taxes and other necessary charges amounted to during that period, but it is quite evident that this property, worth from $2,800 to $3,500, yielded a very good income, from which all needed repairs should have been provided for. What was done with the money received for rent, beyond $131.65, is not stated. The trustee admits that he made very little repairs, and that the place "is generally in a very bad condition ; " while the testimony relied upon to justify the loan also shows that a considerable part of it would have to be expended in repairs. Both under the law and by the terms of the will it was and is the duty of the trustee to maintain the property in a tenantable condition ; and as he admittedly received sufficient moneys to enable him to do this, it would seem that its present dilapidation is due to his neglect. To allow him now to restore the property to the condition in which he should have maintained it at the expense of the remaindermen, would be grossly unjust to them.

The trustee is a practicing attorney, and he therefore should know that his duties under the will are not limited to the life tenants or the life estate. Under its provisions he is charged with the care and management of the entire estate, and must have due regard for the rights and interests of the remainder-men as well as of those in whom its immediate enjoyment is vested. It is his duty equally and equitably to preserve the rights and interests of both the life tenants and the remainder-men, and to neither promote nor allow an impairment of the estate of either for the benefit of the other. Nor can the orphans' court permit this to be done. Under the constitution, property cannot be taken for private purposes against the will of the owner, either by legislation or judicial decree, directly or by incumbrance. The act of 1853 does not attempt to change or impair vested rights in estates, whether legal or equitable, in possession or expectancy. Proceedings under it are authorized only when " for the interest and advantage of those interested," and "without injury or prejudice to any trust " for which the real estate is held. The statute, plainly, so limits the power of the courts as to preserve to the parties their constitutional rights of property, and contemplates the conveyance or mortgaging of estates only when advantageous to all concerned. The power conferred by the statute should be cautiously exercised; it was not designed to make the estate of one man subserve the interests of another. That some of the life tenants in the case before us may also be co-remaindermen does not affect these controlling principles; their dual capacity cannot enlarge their rights to the prejudice of the rights of others.

Under the circumstances of the present case it may be questioned whether the remaindermen should be called upon to contribute or become liable for any part of the cost of the proposed alterations. However, as the facts are not all before us, we do not now decide that question. No distinction has been made between the cost of the necessary repairs and the cost of the additional improvements, or what proportion of the latter should be borne by the life estate and the estate in remainder, respectively. It will be necessary therefore to send the case back to the orphans' court in order that the facts may be found upon which these questions can be determined. If that court should be of opinion that the proposed alterations or improvements will be

advantageous to the remaindermen, and of greater cost than the life tenants should bear, a decree should be framed specifying with sufficient fullness and certainty how and in what proportions the loan should be paid. For this purpose it may become necessary to take further testimony. It will be proper to ascertain with reasonable certainty : (1) The probable duration of the life estate ; (2) whether the proposed outlay becomes necessary because of the neglect of the trustee to maintain the premises in a tenantable condition ; (3) whether the proposed alterations are such as the trustee should reasonably make for the benefit of the life tenants, without regard to possible advantages to the remaindermen ;. (4) whether the improvements may not be worn out, or the changing demands of the neighborhood render them useless, before the expiration of the life estate. In either of these events the loan, if authorized, should be made on the credit of the life estate and the lien restricted to it.

If it should be found to the interest and advantage of both the life tenants and the remaindermen to have the improvements made and the loan effected, and that the cost would be more than the life estate should bear, then the court will determine by its decree what proportion should be borne by each estate, the lien, notwithstanding, to extend to both. Ordinarily, when both estates will be benefited by the proposed improvements, the court should consider to what extent the improvements will remain and benefit the property beyond the termination of the life estate, and this should form the basis of the charge against the remainder.

But it will not be necessary to go into that question in the present case. The income of the property as left by the testator was $300 per year, and this sum, less the taxes and cost of repairs, may be taken as representing its normal rental value to the life tenants. All of the income, therefore, in excess of $300 per annum, should, in equity be applied on the mortgage loan until it is extinguished. The cost of restoring the property to the condition in which the trustee should have kept it, so far as its restoration may form a part of the improvements, should be ascertained and borne by the trustee, and the proposed loan reduced to that extent. If the trustee has paid this money to the life tenants he may retain it from the net income hereafter

accruing to them and apply it on the mortgage. In that event the loan may be permitted for the amount necessary to meet the improvements. After this the sum of $300 per year, which is the amount received from the property when in a tenantable condition, may be retained by the trustee from the income, and by him expended in accordance with the terms of the will. Upon the extinguishment of the mortgage loan, the whole income, after providing for taxes, repairs and proper charges, will be paid by the trustee to the life tenants as directed by the testator.

Any greater allowance to the life tenants would, in effect, be charging the remaindermen with the cost of repairs which it was the duty of the life tenants to pay, and increasing the income of the latter through improvements that may prove unsuitable and wholly useless to the remaindermen. This apportionment takes from the life tenants nothing to which they are entitled, and yet visits the remaindermen with the risk of having to pay a loan which they did not contract, and from which they may derive no benefit.

The decree of the orphans' court is reversed, and the record remitted for further proceedings in accordance with this opinion.